PEOPLE v STEVENS

Docket No. 312325. Submitted September 3, 2014, at Detroit. Decided
    September 11, 2014, at 9:00 a.m. Leave to appeal sought.
    Roland H. Stevens was convicted of assault with intent to do great
    bodily harm, MCL 750.84, following a jury trial in the Wayne
    Circuit Court. The court, Gregory D. Bill, J., sentenced defendant
    as a fourth-offense habitual offender to 7 to 20 years in prison.
    Defendant appealed.

    The Court of Appeals *held*:

    1. Prior record variable (PRV) 5, MCL 777.55, concerns prior
misdemeanor convictions and prior misdemeanor juvenile adjudi-
cations. Under PRV 5, 20 points are to be assessed if the offender
has seven or more prior misdemeanor convictions, 15 points are to
be assessed if the offender has five or six misdemeanor convictions,
10 points are to be assessed if the offender has 3 or 4 prior
misdemeanor convictions, 5 points are to be assessed if the
offender has two prior misdemeanor convictions, and 2 points are
to be assessed if the offender has one prior misdemeanor convic-
tion. However, except as otherwise provided in MCL 777.55(2), a
prior misdemeanor conviction may be counted only if it is an
offense against a person or property, a controlled substance
offense, or a weapon offense. While the term "controlled substance
offense" is not defined in the sentencing guidelines, it is appropri-
ate to apply the definition of "controlled substance" from the
Public Health Code, MCL 333.7104(2), for the purpose of scoring
PRV 5. While drug paraphernalia is not itself a controlled sub-
stance, the definition of "drug paraphernalia" under the Public
Health Code, MCL 333.7451, makes clear that certain acts related
to drug paraphernalia have been criminalized because drug para-
phernalia is inextricably linked to controlled substances. Further,
the Legislature has specifically categorized offenses involving drug
paraphernalia as controlled substance offenses under the Public
Health Code. Therefore, offenses involving drug paraphernalia
qualify as controlled substance offenses and may be counted when
scoring PRV 5. In this case, the trial court properly counted
defendant's prior misdemeanor convictions for possession of drug
paraphernalia under PRV 5. Counting those offenses and also

accepting the prosecution's concession of error relating to several of defendant's other misdemeanor convictions, PRV 5 should have been scored at 15 points rather than 20 points. The error, however, did not require resentencing because the change to defendant's PRV score did not alter the appropriate guidelines range.

2. The elements of assault with intent to commit great bodily harm are (1) an attempt or threat with force or violence to do corporal harm to another, and (2) an intent to do great bodily harm less than murder. It is a specific intent crime, requiring an intent to do serious injury of an aggravated nature. In this case, the evidence—particularly defendant's instigation of the fight, his use of a knife, and the serious injury suffered by the victim—was sufficient to demonstrate that defendant intended to cause a serious injury of an aggravated nature. Ample evidence also existed to exclude beyond a reasonable doubt defendant's claim of self-defense. Therefore, the evidence presented at trial was sufficient to sustain defendant's conviction.

Affirmed.

SENTENCES — SENTENCING GUIDELINES — PRIOR RECORD VARIABLES — PRIOR MISDEMEANOR CONVICTIONS — CONTROLLED SUBSTANCE OFFENSES — POSSESSION OF DRUG PARAPHERNALIA.

Prior record variable (PRV) 5, MCL 777.55, concerns prior misdemeanor convictions and prior misdemeanor juvenile adjudications; offenses involving drug paraphernalia qualify as "controlled substance offenses" as that term is used in PRV 5 and may be counted when scoring PRV 5.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Kym Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Jon P. Wojtala*, Assistant Prosecuting Attorney, for the people.

*Michael J. McCarthy, PC* (by *Michael J. McCarthy*), for defendant.

Before: HOEKSTRA, P.J., and WILDER and FORT HOOD, JJ.

PER CURIAM. Following a jury trial, defendant appeals as of right his conviction of assault with intent to do

great bodily harm (AWIGBH), MCL 750.84. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 7 to 20 years' imprisonment. Because the prosecution presented sufficient evidence to support defendant's conviction for AWIGBH and any error related to the scoring of prior record variable (PRV) 5 does not entitle defendant to resentencing, we affirm.

Defendant's conviction arises from a stabbing that occurred on March 7, 2012. At the time of the stabbing, the victim, Luther Allbright, lived with two women, Maria Castillo and Sandra Williams. The evening before the stabbing, defendant and Williams went to defendant's apartment, approximately two blocks from Allbright's house. When Williams did not return to Allbright's house, Castillo became concerned, and she and Allbright went to defendant's apartment. After Castillo aggressively knocked on the apartment door, defendant opened the door and punched Castillo, at which time Allbright departed from the building without entering defendant's apartment. Sometime later, Castillo and Williams also departed; but defendant ran after the women and stopped them. Defendant frisked Williams, supposedly looking for possessions he claimed were missing from his apartment.

The following afternoon, defendant went to Allbright's home and a fight ensued. In particular, according to Allbright, defendant entered his home uninvited and asked, "Why did you bring all that drama to my house?" Defendant then punched Allbright in the face, after which defendant wrestled him to the ground. While the two rolled on the ground, defendant stabbed Allbright twice in the left side of his back, once in the right side of his back (puncturing Allbright's lung), and once in his left arm. He then pinned Allbright to the

ground and told him, "I'm King Tut, bitch." Afterward, defendant left Allbright's house, purchased beer at a party store, and returned to his apartment.

At trial, defendant conceded that he brought a knife to Allbright's home and that he stabbed Allbright, but he claimed that he acted in self-defense. According to defendant's version of events, he suffers from several medical conditions, including congestive heart failure. Defendant maintained that, during the fight, Allbright ended up on top of defendant while they were wrestling on the ground and, because of his medical conditions, defendant could not breathe, which prompted him to pull a knife and stab Allbright several times.

The trial court instructed the jury on the theory of self-defense; however, the jury convicted defendant of AWIGBH.[1] The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 7 to 20 years' imprisonment. Defendant now appeals as of right.

On appeal, defendant first argues that the trial court erred when it assessed 20 points under PRV 5 on the basis of defendant's prior misdemeanor convictions. Defendant failed to preserve his challenge to the scoring of PRV 5 for appeal, meaning his claim is unpreserved and reviewed for plain error affecting his substantial rights. *People v Loper*, 299 Mich App 451, 456-457; 830 NW2d 836 (2013); MCL 769.34(10).

Relevant to defendant's claim, under MCL 777.55(1)(a), PRV 5 should be scored at 20 points when the offender has seven or more prior misdemeanor convictions. The phrase "prior misdemeanor conviction" refers to "a conviction for a misdemeanor under a

---

[1] The jury found defendant not guilty of assault with intent to murder, felonious assault, and first-degree home invasion.

law of this state, a political subdivision of this state, another state, a political subdivision of another state, or the United States if the conviction was entered before the sentencing offense was committed." MCL 777.55(3)(a). However, for purposes of PRV 5, not all prior misdemeanor convictions may be counted when determining how many prior misdemeanor convictions a defendant has. MCL 777.55(2). Specifically, except as provided in MCL 777.55(2)(b), which does not apply in this case, a prior misdemeanor conviction may be counted "only if it is an offense against a person or property, a controlled substance offense, or a weapon offense." MCL 777.55(2)(a).

In this case, defendant has numerous misdemeanor convictions that the trial court considered when it assessed defendant 20 points under PRV 5. On appeal, defendant acknowledges that he has 13 misdemeanor convictions, including four for possession of drug paraphernalia, but he asserts that he should have been assessed only 10 points, the score appropriate when the offender has 3 or 4 misdemeanor convictions. See MCL 777.55(1)(c). Defendant argues that only four of his misdemeanor offenses—aggravated assault, resisting and obstructing a police officer, and two trespassing convictions—qualify as offenses against a person or property, a controlled substance offense, or a weapon offense. He specifically asserts that his four convictions for possession of drug paraphernalia may not be counted as controlled substance offenses.

The prosecution concedes error in the scoring of PRV 5, acknowledging that not all of defendant's misdemeanor convictions should have been counted. However, the prosecution identifies what it considers to be six offenses that could have been properly counted under PRV 5: aggravated assault, resisting and ob-

structing, and four convictions for possession of drug paraphernalia.[2] By the prosecution's count, defendant's prior misdemeanors merit a PRV 5 score of 15 points. See MCL 777.55(1)(b).

If the prosecution is correct, any error in the trial court's scoring was harmless as it did not affect defendant's ultimate PRV score and therefore did not alter the appropriate guideline range. In contrast, if defendant's view is correct, a PRV 5 score of 10 points would necessitate resentencing because it would affect defendant's ultimate PRV score and thus alter the appropriate guidelines range. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required."). Specifically, with a PRV 5 score of 20 points, defendant's total PRV score was 55 points, placing him in PRV Level E. MCL 777.65. A reduction to 15 points, as advanced by the prosecution, results in a total PRV score of 50 points, which still places defendant in PRV Level E. In contrast, a 10-point score for PRV 5, as championed by defendant, reduces defendant's total PRV score to 45 points, placing him in PRV Level D. *Id*. Because error, if there is error, in the counting of defendant's misdemeanor drug paraphernalia offenses would necessitate resentencing, we must decide whether misdemeanor convictions for possession of drug paraphernalia qualify as controlled substance offenses for purposes of scoring PRV 5.

---

[2] We note that, in contrast to the prosecution, defendant includes two trespassing convictions as misdemeanors that may be scored under PRV 5, presumably on the premise that they constitute crimes against property. Because, in this case, scoring of these trespassing offenses will not alter the appropriate guideline range, we find it unnecessary to consider whether misdemeanor trespassing convictions may be scored under PRV 5. Cf. *People v Crews*, 299 Mich App 381, 399 n 10; 829 NW2d 898 (2013).

To make this determination, we must ascertain what the Legislature intended when it authorized the counting of a prior misdemeanor conviction under PRV 5 that qualified as a "controlled substance offense." MCL 777.55(2)(a). The Code of Criminal Procedure and, in particular, the statutory provisions relating to the scoring of PRV 5 do not include a definition of the phrase "controlled substance offense." However, this Court has previously recognized that the phrase relates to Article 7 of the Public Health Code. See *People v Endres*, 269 Mich App 414, 418; 711 NW2d 398 (2006), overruled in part on other grounds by *People v Hardy*, 494 Mich 430, 438 n 18 (2013). Specifically, Article 7, which is titled "controlled substances,"[3] includes a definition for the term "controlled substance" and it penalizes offenses involving controlled substances. Because Article 7 governs controlled substances, in *Endres*, this Court ruled "it appropriate to apply the Public Health Code definition of 'controlled substance' for purposes of PRV 5," and, because alcohol was not identified as a controlled substance under the Public Health Code definition, this Court reasoned that the defendant's alcohol-related misdemeanor convictions could not be counted under PRV 5 as controlled substance offenses. *Id*. at 418-420.

In keeping with *Endres*, we again turn to Article 7 of the Public Health Code to ascertain whether misdemeanor convictions for possession of drug paraphernalia may be counted toward the scoring of PRV 5 as controlled substance offenses. A definition of drug paraphernalia is specifically provided in Article 7 at MCL 333.7451, and this definition makes plain that, while drug paraphernalia is not itself a controlled substance, certain acts related to drug paraphernalia have been criminalized because drug paraphernalia is inextricably

---

[3] Capitalization altered.

linked to controlled substances. For this reason, offenses involving drug paraphernalia qualify as controlled substance offenses. Specifically, "drug paraphernalia" refers to "any equipment, product, material, or combination of equipment, products, or materials, which is specifically designed for use in planting; propagating; cultivating; growing; harvesting; manufacturing; compounding; converting; producing; processing; preparing; testing; analyzing; packaging; repackaging; storing; containing; concealing; injecting, ingesting, inhaling, or otherwise introducing into the human body *a controlled substance* . . . ." MCL 333.7451 (emphasis added). Acts involving drug paraphernalia are then criminalized in MCL 333.7453 and MCL 333.7455. Notably, the statutory definition of drug paraphernalia and the related provisions criminalizing activities associated with drug paraphernalia are found in Part 74 of Article 7, and Part 74 is specifically titled "offenses and penalties."[4] Thus, offenses involving drug paraphernalia have been specifically categorized by the Legislature as offenses within the controlled substances article of the Public Health Code. Given this classification, it is apparent that such offenses may be counted as controlled substance offenses for purposes of PRV 5.

Accordingly, we conclude that, in this case, the trial court properly counted defendant's misdemeanor convictions for possession of drug paraphernalia under PRV 5.[5] Counting these offenses and also accepting the

---

[4] Capitalization altered; italicization omitted.

[5] Given this result, we see no merit in defendant's claim that counsel rendered ineffective assistance by failing to object to the scoring of defendant's misdemeanor convictions for possession of drug paraphernalia. Because these convictions were properly scored, any objection by counsel would have been futile, and counsel cannot be considered ineffective for failing to raise a futile objection. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

prosecution's concession of error relating to several of defendant's other misdemeanor convictions, PRV 5 should have been scored at 15 points rather than 20 points. However, this error does not require resentencing because the change to defendant's PRV score does not alter the appropriate guidelines range. See *Francisco*, 474 Mich at 89 n 8.

On appeal, defendant also argues that the evidence presented at trial was insufficient to sustain his conviction for AWIGBH. Specifically, defendant maintains that the prosecution failed to establish that he possessed the requisite intent to cause great bodily harm. He also asserts that the prosecution failed to disprove his claim of self-defense.

Challenges to the sufficiency of the evidence are reviewed de novo, in the light most favorable to the prosecution, to determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012). All conflicts in the evidence are resolved in favor of the prosecution. *Id*. This Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

The elements of AWIGBH are "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). AWIGBH is a specific intent crime. *Id*. The intent to do great bodily harm less than murder is "an intent to do serious injury of an aggravated nature." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted). "If a defendant has such intent, the fact

that he was provoked or that he acted in the heat of passion is irrelevant to a conviction." *People v Mitchell*, 149 Mich App 36, 39; 385 NW2d 717 (1986). Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent. *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010). Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats. See *Parcha*, 227 Mich App at 239; *People v Cunningham*, 21 Mich App 381, 384; 175 NW2d 781 (1970). Although actual injury to the victim is not an element of the crime, *People v Harrington*, 194 Mich App 424, 430; 487 NW2d 479 (1992), injuries suffered by the victim may also be indicative of a defendant's intent, see *Cunningham*, 21 Mich App at 384.

In this case, defendant went to Allbright's home armed with a knife to confront him over a perceived wrong from the previous evening. Allbright testified that defendant entered his home without invitation, threatened him, instigated a fight, and wrestled him to the ground. Defendant then took out his knife and stabbed Allbright four times. Three of the stab wounds were to Allbright's back, and one succeeded in puncturing his lung. After stabbing Allbright, defendant pinned him to the ground and proclaimed that he was "King Tut, bitch." Defendant then walked away from the incident, purchased beer, and went home. On the whole, this evidence—particularly defendant's instigation of the fight, his use of a knife, and the serious injury suffered by Allbright—was sufficient to demonstrate that defendant intended to cause a serious injury of an aggravated nature.

To the extent defendant argues that the prosecution failed to disprove his claim of self-defense, his claim is

equally without merit. Once a defendant raises the issue of self-defense and "satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist," the prosecution must "exclude the possibility" of self-defense beyond a reasonable doubt. *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010) (quotation marks and citations omitted). Under MCL 780.972(1):

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . .
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

In this case, ample evidence existed to discount defendant's claim of self-defense. According to Allbright, defendant entered his home uninvited and attacked him. From this, it appears defendant had no legal right to be in the home, and that, by attacking Allbright, defendant engaged in the commission of a crime. In these circumstances, defendant could not justifiably claim self-defense. See MCL 780.972(1)(a). Further, Allbright was never armed with any sort of weapon, and there is no indication that Allbright used deadly force against defendant. The only evidence that defendant had reason to fear for his life came from defendant's testimony, in particular defendant's claim that Allbright was on top of him during their struggle, causing him difficulty breathing. But this testimony was in conflict with Allbright's description of events, and the credibility of defendant's testimony was a question for the jury. See *Kanaan*, 278 Mich App at 619.

And, indeed, a jury could well disbelieve, even from defendant's description, that stabbing Allbright four times was necessary to prevent defendant's imminent death. On the whole, the prosecution provided sufficient evidence to exclude beyond a reasonable doubt defendant's claim of self-defense. See MCL 780.972(1)(a).

Affirmed.

HOEKSTRA, P.J., and WILDER and FORT HOOD, JJ., concurred.