# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CURT THOMAS RUEGSEGGER,

Defendant-Appellant.

UNPUBLISHED
March 15, 2018

No. 336216
Kent Circuit Court
LC No. 16-001648-FC

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (personal injury and the use of force or coercion); and third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion). The trial court sentenced defendant to concurrent terms of 7 to 40 years' imprisonment for his CSC-I conviction and 6 to 15 years' imprisonment for his CSC-III conviction. Because the evidence was sufficient to support defendant's convictions and defendant is not entitled to a *Crosby*[1] remand, we affirm.

On January 19, 2016, defendant solicited the victim for sex and she agreed to have sex with him in exchange for $60. Defendant took the victim to an empty building. Once inside the building, the victim asked defendant for payment, stating that she wanted her money first. Defendant retrieved his wallet from his vehicle and showed the wallet to the victim. However, rather than pay the victim, defendant grabbed her and threw her to the ground. He then proceeded to penetrate the victim vaginally and anally without her consent. Afterward, defendant dressed and left. The following day, the victim underwent a sexual assault examination. As a result of the assault, the victim suffered rug burns and bruises on her back and knees as well as abrasions on her arms and a laceration to her anus. At trial, the defense theory was that the victim engaged in consensual sex with defendant as a prostitute and that she fabricated her allegations of sexual assault because defendant refused to pay her. The jury convicted defendant as noted above. He now appeals as of right.

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

-1-

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to support his convictions. In particular, defendant contends that because the victim initially agreed to have sex with defendant in exchange for money it cannot be proven beyond a reasonable doubt that defendant used force or coercion to induce her to submit to sexual penetration. In other words, defendant argues that the victim willingly engaged in the sexual acts because she believed she would be compensated. Additionally, defendant argues that there is insufficient evidence of personal injury because, according to defendant, there is no indication that defendant caused the victim's injuries.

"We review de novo challenges to the sufficiency of the evidence, examining the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found every essential element proved beyond a reasonable doubt." *People v Mitchell*, 301 Mich App 282, 289-290; 835 NW2d 615 (2013). "All conflicts in the evidence are resolved in favor of the prosecution." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98, 103 (2014). "This Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *Id*.

We first consider whether there was sufficient evidence to find that defendant used force or coercion to accomplish the sexual penetrations of the victim. Relevant to defendant's CSC-I conviction, "an actor may be found guilty under MCL 750.520b(1)(f) if the actor (1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration." *People v Nickens*, 470 Mich 622, 629; 685 NW2d 657 (2004). Similarly, MCL 750.520d(1)(b) provides that a person is guilty of CSC-III if the person (1) "engages in sexual penetration with another person" and (2) "[f]orce or coercion is used to accomplish the sexual penetration." For purposes of these provisions, use of "force or coercion" includes, but is not limited to, the following:

> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

> \* \* \*

> (*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim. [MCL 750.520b(1)(f). See also MCL 750.520d(1)(b).]

As explained by the Michigan Supreme Court, "the prohibited 'force' encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002). "The existence of force or coercion is to be determined in light of all the circumstances." *People v Eisen*, 296 Mich App 326, 333; 820 NW2d 229 (2012) (quotation marks and citation omitted).

In this case, the evidence was sufficient to establish beyond a reasonable doubt that defendant used force or coercion to sexually penetrate the victim. The victim testified that defendant "grabbed" her and "threw" her to the ground. She explained that defendant was "stronger" than her and he "caught [her] off guard." After forcing the victim to the ground, defendant sexually penetrated the victim without regard for her wishes. Indeed, although the

victim asked defendant "[w]hy are you doing this?" and told defendant "[d]on't do this," defendant engaged in vaginal and anal sex with the victim. This evidence was sufficient to support a finding that defendant used force or coercion to accomplish sexual penetration.

In contrast, in disputing that he used force or coercion to sexually penetrate the victim, defendant asserts that the victim consented to have sex with him as a prostitute in exchange for money. However, although the victim admitted that she initially agreed to have sex with defendant in exchange for money, her testimony shows that she was unwilling to have sex with defendant until she was paid and that she was entirely unwilling to engage in anal sex. As demonstrated by the victim's testimony, rather than pay her, defendant used force or coercion to sexually penetrate the victim both vaginally and anally. Insofar as defendant disputes the victim's version of events and asserts that she fabricated her allegations because she was not paid, her credibility was a question for the jury. See *Stevens*, 306 Mich App at 628. Viewing the evidence in a light most favorable to the prosecutor, the evidence was sufficient to establish defendant's use of force or coercion to accomplish sexual penetration.

With regard to the personal injury element under MCL 750.520b(1)(f), contrary to defendant's argument, the evidence was also sufficient to establish that the victim suffered "personal injury" within the meaning of the statute. "Personal injury" is defined as "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(n). "[P]hysical injuries for this purpose need not be permanent or substantial," *People v Mackle*, 241 Mich App 583, 596; 617 NW2d 339 (2000), and evidence "that the victim sustained bruises, welts, or other marks," even if the injuries are "not serious," may be sufficient to demonstrate "personal injury," *People v Himmelein*, 177 Mich App 365, 377; 442 NW2d 667 (1989). In this case, the victim suffered bodily injury to her knees, back, arms, and anus. While defendant argues that the prosecution failed to establish a causal connection between his assault of the victim and the injuries in question, the evidence showed that, immediately following the sexual assault, the victim reported to the police that her back was hurting and showed them the various rug burns and bruises on her back and knees. The victim also testified to her injuries at trial, and she denied having any injuries to her back before the assault. Further, the sexual assault nurse examiner (SANE) testified that the victim had a laceration to her anus. Although the defense's expert witness opined that *some* of the marks were too far healed to have been caused by the recent assault, his credibility and the weight to afford his testimony was for the jury. See *Stevens*, 306 Mich App at 628. Given the bodily injuries described by the victim, the police, and the SANE nurse, there was sufficient evidence to allow a rationale jury to conclude beyond a reasonable doubt that the victim suffered personal injury. Overall, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support defendant's convictions.

## II. SENTENCING

Defendant next argues that he is entitled to a *Crosby* remand for resentencing under *Lockridge*[2] because the trial court engaged in judicial fact-finding that increased his minimum

---

[2] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

sentence range in violation of his Sixth Amendment rights. In *Lockridge*, the Court held that Michigan's sentencing guidelines were constitutionally deficient to the extent that "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range." *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015). Based on *Lockridge*, defendant now argues that the trial court erred by engaging in judicial fact-finding relating to the scoring of OV 10.[3] However, this argument is without merit because *Lockridge* did not preclude judicial fact-finding; rather, *Lockridge* remedied the constitutional defect in the sentencing guidelines by rendering the guidelines advisory. *People v Biddles*, 316 Mich App 148, 159; 896 NW2d 461 (2016). While the guidelines are now advisory, post-*Lockridge* it remains true that "the highest number of points possible *must be* assessed for all OVs, whether using judge-found facts or not." *Lockridge*, 498 Mich at 392 n 28. Consequently, the trial court did not err by engaging in judicial fact-finding to score the now-advisory guidelines, and defendant is not entitled to a *Crosby* remand based on judicial fact-finding.

Affirmed.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle

---

[3] Although not contained in his statement of the questions presented, defendant also appears to challenge whether there was evidence to support the trial court's assessment of 5 points for OV 10. See *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016) (explaining the difference between an evidentiary challenge to the scoring of an OV and a constitutional judicial fact-finding argument under *Lockridge*). This argument is without merit. The evidence shows that defendant was larger and stronger than the victim, and that, once he had the victim isolated in an empty building, he exploited this difference in their size and strength to sexually assault the victim. On this record, the trial court did not clearly err by finding that the victim was vulnerable and concluding that defendant exploited this vulnerability. See generally *People v Cannon*, 481 Mich 152, 158; 749 NW2d 257 (2008). Thus, the trial court did not err by scoring OV 10 at 5 points. See MCL 777.40(1)(c).